A. J. McCARN, ADMINISTRATOR, ETC., ET AL., APPELLEES, v. EBEN COOLEY ET AL., APPELLANTS.

[FILED OCTOBER 14, 1890.]

1. Review: BILL OF EXCEPTIONS ESSENTIAL. Alleged errors and matters of exception which are not properly subjects of record, must be preserved in writing and certified as required by statute, in order to be considered by the supreme court; and affidavits in support of, or in opposition to, any proceeding in the court below, must be embodied in a bill of exceptions.

2. ———: STIPULATION INSUFFICIENT. A stipulation of the attorneys in a cause stating that the record is a correct transcript of the proceedings, or that the files annexed are the original files, and that the transcript may be accepted as the bill of exceptions, may be sufficient to justify the judge in the court below in signing the same as a bill of exceptions, but forms no sufficient basis for the supreme court to consider the same as a bill of exceptions, without having been settled and signed as such. (See *Credit Foncier v. Rogers*, 8 Neb., 34.)

APPEAL from the district court for Knox county. Heard below before POWERS, J.

*J. H. McIntosh*, and *John L. Webster* (*Ambrose & Strickler*, being also of counsel), for appellants, cited, as to the notice of sale: Freeman, Executions, sec. 285; Murfree, Sheriffs, sec., 676; *Farr v. Sims*, Rich. Eq. Cas. [S. Car.], 122, [24 Am. Dec., 396].

*J. H. Berryman*, and *Holmes & Hays*, contra, cited, on the same point: Code, sec. 497; *Perkins v. Spaulding*, 2 Mich., 157.

COBB, CH. J.

On the 28th day of March, 1887, the appellees and plaintiffs filed their petition in the district court of said county, to foreclose a mortgage given by the appellants and defendants, Eben Cooley and Phœbe, his wife, on a certain tract of land situate in said county, to-wit : The east half of the northeast quarter, and the east half of the southeast quarter of section 32; the west half of the northwest quarter, the west half of the southwest quarter, the east half of the southwest quarter, the southeast quarter of the northeast quarter, and the southeast quarter of section 33; the southwest quarter of the northwest quarter, the west half of the southwest quarter, and the southeast quarter of the southwest quarter of section 34, township 30, range 6 west, aggregating seven hundred and sixty acres, to secure to the plaintiffs the payment of $2,700, according to the terms of certain notes and bonds therein described. The mortgagors were personally served by summons on April 4, 1887.

The Dakota Mortgage Loan Corporation, of Boston, Mass., made defendant by publication, answered on May 19, 1887, that there was then due from the mortgagors

McCarn v. Cooley.

$950 on a subsequent mortgage, and a lien junior to that of the plaintiffs, for which judgment was asked and distribution of the proceeds of the mortgaged premises according to priority of liens.

On the same day a decree was taken by the plaintiffs foreclosing their mortgage and directing the premises to be sold by the sheriff of the county as upon executions at law and the proceeds brought into court to be applied to the satisfaction of the sum of $3,115 as found due with costs and accruing costs. On the same day a decree was entered in favor of the defendant, The Dakota Mortgage Loan Corporation, as a junior lien to that of the plaintiffs on the mortgaged premises, for the sum of $850 to be satisfied accordingly and to have execution therefor. On March 1, 1888, an order of sale was issued to the sheriff, the lands were appraised, aggregating the value of $4,880, and on April 13, 1888, were sold to Eugene A. Crum for $3,325. A motion to set aside the sale, supported by affidavits, upon the following grounds, was overruled, and the sale was confirmed:

"I. That the files of the cause were lost from the clerk's office and could not be found at the time of the order of sale or the day of sale.

"II. That the notice of sale does not state the terms of sale.

"III. On the day of sale there was no copy of the appraisal or of the clerk's and treasurer's certificate on file in the clerk's office, and the appraisment was not its true value.

"IV. The appraisers fixed a lower estimate than they thought the lands were worth, at the instance of the plaintiffs.

"V. That one of the appraisers estimated it at $18 per acre.

"VI. That they did not view the land in making their appraisement. At the commencement of this action the

prior mortgage of the Phœnix Insurance Company was unpaid, and was not made a party to the proceedings of foreclosure, by reason of which the lands did not bring as much as they otherwise would have brought.

"VII. That said prior mortgagee has brought an action in the United States court for foreclosure, in which all parties interested are included, that the court may find the amount due to each lien holder.

"VIII. That the plaintiffs agreed, prior to the bringing of this action, to take $2,500 and release their claim, and at their request the mortgage for $6,350 to the Dakota Mortgage Loan Corporation, to pay the claims of plaintiff and others, was made and placed of record; after which the plaintiffs refused to accept the amount, and the Dakota Mortgage Company refused to release its mortgage, defeating the proposition, and obstructing defendants from procuring it elsewhere, and causing the lands to be sold for less than their true value.

"IX. That the lands should not have been sold in the parcels as returned.

"X. That the lands did not bring two-thirds of the appraised value, but sold for less than their value in cash.

"XI. That the mortgagors are in a position not to redeem on account of the lien of the Dakota Mortgage Loan Company, which is in collusion with the plaintiffs; and after paying the commission to that company there is due from it sufficient to discharge the prior liens against the lands.

It appears from the record, that the sale of the mortgaged premises, in this action, was duly confirmed by regular proceedings in open court on the 24th day of May, 1888.

On the 14th day of June, 1888, the Hon. Isaac Powers, Jr., judge of said court, by an order at chambers, after reciting that it had been made to appear on behalf of said defendants that they had been unable, without fault on their part, to secure the settlement of a bill of exceptions

in said cause, within the time allowed by law, extended such time and allowed them forty days from said date in which to prepare such bill of exceptions, and submit the same to the adverse party, or his attorney, for examination and amendment. This order was made upon the affidavit of Phœbe Cooley, one of the defendants in the case, which affidavit is in the files. Besides these two papers, there is nothing in the case in any manner referring to a bill of exceptions; but there is a stipulation which was probably intended by the parties to supersede and take the place of a bill of exceptions. This it cannot do. In the case of *Ray v. Mason*, 6 Neb., 101, this court held, as appears from the syllabus, "when evidence has been introduced in the court below, which is not properly a matter of record, a party who desires to avail himself of it in the supreme court, must preserve the same by a bill of exceptions."

This case was followed by that of the *Credit Foncier of America v. Rogers*, 8 Id., 34. In that case, like the one at bar, the parties had entered into a stipulation as to the facts and evidence upon which the judgment of the trial court was based. I copy the syllabus entire:

"1. Exceptions which are not properly a matter of record must be preserved in writing, and properly certified by the presiding judge in order to be considered by the supreme court; and affidavits in support of, or in opposition to, any proceeding in the court below, must be embodied in a bill of exceptions.

"2. A stipulation of the attorneys in the cause, stating that the record is a correct transcript of the proceedings, may be sufficient to justify the judge in the court below in signing the bill as presented, but forms no basis for the supreme court to consider the matters embodied in the bill of exceptions." This case was followed in the subsequent ones of *State, ex rel. Stratton, v. Knapp*, 8 Id., 436; *Aultman v. Howe*, 10 Id., 8; *Eaton v. Carruth*, 11 Id., 231; *Walker v. Lutz*, 14 Id., 274; *Kyle v. Chase*, Id., 528;

*Dolen v. State,* 15 Id., 405; *Tessier v. Crowley,* 16 Id., 369; *McMurtry v. State,* 19 Id., 147.

Of the four points presented by the plaintiffs in error, three are based exclusively upon matters falling within the rule of the above cases, and not being presented by a bill of exceptions, cannot be considered by this court.

Objection is made to the notice of sale. A copy of the notice of sale, with an affidavit of the publication thereof, is attached to the sheriff's return, and will be deemed and taken as a part of such return, and accordingly as a part of the record proper. There are two objections made to the notice. First, that it does not contain the title of the cause; and, second, that it does not state the terms of sale. As to the first objection, the title of the cause as contained in the caption of the petition is: "A. J. McCarn, Administrator for the Heirs of Susan K. Peterson, Deceased, Alex. K. Peterson, and Jerome Dickson, Plaintiffs, vs. Eben Cooley and Phœbe Cooley, Dakota Mortgage Loan Corporation, and J. H. Yates, Defendants." The words "for the heirs" in the above are clearly surplusage, and were so considered by the parties, as they are dropped out of the title in the subsequent papers. With the exception that these surplus words are omitted in the notice, the title of the case is the same, and their omission is proper, if at all material. While there is no provision of statute requiring the notice of sale to contain the title of the cause, it has always been customary, and as a mark of identification the notice should contain substantially the title of the cause. But the retention of useless and meaningless words that may have crept into the title, as used in other papers in the case, will not vitiate the notice.

As to the second objection, the notice contains the words "sell said real estate at public auction to the highest and best bidder for *costs* to satisfy said two orders of sale." The word *costs* is so obviously a typographical error, the word cash being intended, that no one could have failed to

understand it. The statute does not provide that notices of sale contain the terms of sale; nor does it, that I can find, in terms prescribe or fix such terms; but as the object and purpose of foreclosure proceeding is to reduce the claim of the plaintiff to cash, and as there is no provision for making such sales upon credit, or for receiving anything else in payment for mortgaged premises but current money, all persons must and do presume that such sales will be made for cash alone, yet it is a custom to be approved and encouraged, that such notices contain the terms—cash, as a matter of form. But unless the language of the notice is calculated to mislead to the belief that the terms of sale are to be other than for cash, it must not be held sufficient.

The order of the district court is

AFFIRMED.

THE other judges concur.